NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0927n.06

No. 12-5869

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 15, 2014
DEBORAH S. HUNT, Clerk

KARISSA SWEAT,                          )
                                        )
    Plaintiff-Appellee,             )
                                        )        ON APPEAL FROM THE
v.                                      )        UNITED STATES DISTRICT
                                        )        COURT FOR THE MIDDLE
JOE SHELTON,                            )        DISTRICT OF TENNESSEE
                                        )
    Defendant-Appellant.            )


BEFORE: GIBBONS, KETHLEDGE, and STRANCH, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** This § 1983 case arises out of the shooting death of Reginald Wallace by Nashville police officer Joe Shelton. Plaintiff-appellee Karissa Sweat alleges that Shelton violated Wallace's Fourth Amendment right to be free from excessive force. Shelton appeals the district court's denial of his motion for summary judgment on the basis of qualified immunity. We conclude that we lack jurisdiction to hear this appeal and therefore dismiss it.

I.

On the morning of March 12, 2010, someone broke into Kyle Marion's home. Marion was in his bedroom at the time and called 911. When the police arrived, the intruder had left and several items were missing, including an iPod touch. Shelton, a K-9 officer, was on duty that day with his dog "Memphis." Shelton heard about the burglary over the radio dispatch and drove to the scene of the crime. An officer at the scene took Shelton to the last place where he

had seen the suspect. Shelton deployed Memphis using a tracking harness and fifteen-foot tracking lead and gave Memphis the command to search for the suspect. Eventually, Memphis ran underneath the deck of a house and Shelton heard someone, later identified as Reginald Wallace, make a noise "like he had had the wind knocked out of him." Shelton gave Memphis the command to apprehend Wallace, which means that Memphis was supposed to bite Wallace. Shelton looked down to see Memphis and Wallace underneath the deck, but they quickly moved behind the house, still underneath the deck and out of Shelton's view. Shelton was surprised by Wallace's lack of reaction to Memphis, explaining that:

> Typically . . . when [Memphis] came into contact with somebody, there was a lot of screaming, a lot of yelling, people were in fear of the dog. They usually tried to fight off the dog. . . . And it was—95 percent of the time they complied immediately. . . . They were extremely fearful of the dog. And it was as though the dog was not there at all.

Shelton ran to the back of the house, laid down on the ground, and saw Wallace put his hand into the right pocket of his pants while attempting to crawl out from underneath the deck. Wallace ignored Shelton's commands to show his hands and quit resisting. All the while, it appeared that Memphis was biting Wallace or his clothing. Shelton testified that when Wallace put his hand in his pocket, Shelton became fearful that Wallace was trying to access a weapon. In response, Shelton drew his firearm and aimed it at Wallace. Shelton continued giving verbal commands to Wallace, which were ignored. Shelton described the situation as it progressed:

> He's struggling to get his hand out of his pocket the whole time he's crawling. He [came] to the end of the deck, at which point I had actually gotten up. I was laying on the ground with my firearm pointed at him. I had gotten up and started towards the end of the deck in an effort to try to get closer to him when he [came] out from under the deck to try to help control him. His hand [came] out of his pocket. I could see there was nothing in his hand at that time. . . . He reached up and grabbed the deck and pulled himself out from under the deck. . . . Once I saw his hand come out, I immediately holstered my firearm and continued to give him verbal commands to quit resisting.

At that point, Wallace "began kicking [Memphis] wildly." Shelton advanced toward Wallace and Memphis as Wallace attempted to escape over a fence in the backyard. Shelton pulled Wallace off of the fence and Wallace swung his arm back at Shelton, striking "a glancing blow" on the side of Shelton's face. Shelton staggered back from the hit. As he approached Wallace again, Wallace put his hand back into the right pocket of his pants. At this point, Shelton was behind Wallace and to his right. Shelton then utilized a technique whereby he "trapped" Wallace's hand inside his pocket by placing both of his hands on top of Wallace's hand. Shelton said that he "felt a gun." More specifically, Shelton said he could feel "what felt like the squared edges of a pistol." As Wallace's hand started to come out of his pocket, Shelton "could see what appeared to be a metal, silverish object." Wallace did not follow Shelton's continued commands to quit resisting. Shelton explained: "I began to think I was too close to the suspect. I could tell I was losing my hold on him. I went to spin him around to get some distance from him and push off. And I drew my weapon and fired." Shelton shot Wallace three times without pausing between shots. Wallace fell to the ground after he fired the third shot. Shelton said that he fired the shots because he "was in fear of being shot by Mr. Wallace." The object in Wallace's pocket was the iPod touch owned by Marion. Wallace died that day.

On June 15, 2010, Quiana Johnson, Karissa Sweat, and Waynnesia Brooks[1] filed suit against the Metropolitan Government of Nashville and Davidson County, Joe Shelton, and John Doe police officers. The complaint alleges that the defendants violated Johnson's constitutional rights, including his right to be free from unreasonable search and seizure under the Fourth Amendment. Plaintiffs also brought several state law claims. The district court issued an order

---

[1] Quiana Johnson is the mother of Wallace's son; Karissa Sweat was married to Wallace at the time of his death; Waynnesia Brooks is Wallace's daughter. (DE 1, Compl., 1–2.) An amendment to the complaint, filed on July 19, 2010, added William Wallace, Wallace's brother, as a plaintiff. (DE 22, Amend. to Compl., 89.) Only Sweat is a party to this appeal.

on September 13, 2010, dismissing all of the claims except Sweat's § 1983 claims against Shelton and the John Doe police officers in their individual capacities based on alleged violations of the Fourth Amendment. After completion of discovery, Shelton moved for summary judgment on the basis of qualified immunity. The district court denied this motion, reasoning that it could not conclude, as a matter of law, that Shelton's use of force was reasonable. Shelton timely appealed.

II.

We first consider our jurisdiction over this appeal. Under the collateral order doctrine, this court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the district court's interlocutory denial of qualified immunity to the extent that it turns on an issue of law. *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 495 (6th Cir. 2012). "A defendant raising a qualified immunity defense 'may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial.'" *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995)). However, "a defendant denied qualified immunity may appeal . . . if the issue on appeal is whether the plaintiff's facts, taken at their best, show that the defendant violated clearly established law." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). "The district court's characterization of the basis for its ruling is not dispositive." *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 564 (6th Cir. 2013). Even if the district court stated that it denied a defendant's motion for summary judgment because of the existence of a genuine issue of material fact, we may exercise appellate jurisdiction over purely legal issues related to qualified immunity. *Id.* Although the parties have not briefed the jurisdictional issue, we have "'a duty to consider *sua sponte* whether appellate

jurisdiction is properly invoked.'" *Martin v. City of Taylor*, 509 F.3d 234, 251 (6th Cir. 2007) (quoting *Mattingly v. Farmers State Bank*, 153 F.3d 336, 336 (6th Cir. 1998)).

III.

While challenges to the district court's factual findings are the thrust of Shelton's appeal, he also makes two arguments that he seeks to characterize as legal. Stated simply, they are that (1) the district court applied the wrong legal standard by examining the actual threat to Shelton instead of Shelton's reasonable perception of a threat, and (2) the district court inappropriately applied the standard of *Tennessee v. Garner*, 471 U.S. 1 (1985), to this case. Both arguments rely on inaccurate characterizations of the district court order.

Shelton is correct that the district court's denial of summary judgment is partly based on the threat actually imposed by Wallace. Shelton is also correct that this question is not the ultimate question for the jury. The ultimate question is whether Officer Shelton's actions were objectively reasonable in light of the facts and circumstances. Thus, the reasonableness of Shelton's perception that Wallace was a threat and the reasonableness of his response to that perception would be at issue. But Shelton does not fairly and completely read the district court's order. The district court refers to the correct standard. It also cites case law noting that whether a threat actually exists is relevant to the reasonableness of the officer's actions. *See Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006). As is clear from Shelton's brief, this argument quickly changes from a legal argument to an attack on the district court's factual findings.

The other so-called legal argument is merely a criticism of the district court's choice to cite *Garner* in passing. While this case is, as Shelton suggests, more properly categorized as a self-defense case, as opposed to a fleeing felon case, the district court's opinion makes clear that it understood the applicable law.

IV.

We now turn to the heart of the matter. The basis for the appeal is the district court's finding that genuine issues of material fact existed as to whether Wallace actually posed an immediate threat to Shelton and whether it was reasonable for Shelton to believe that the object Wallace had in his pocket was a weapon. Precedent precludes our review of these findings in the context of an interlocutory appeal challenging denial of qualified immunity. *Johnson*, 515 U.S. at 319–20 ("[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."); *see also Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014) ("[A]n order denying summary judgment based on a determination of 'evidence sufficiency' does not present [an immediately appealable] legal question"); *Romo v. Largen*, 723 F.3d 670, 674 (6th Cir. 2013).[2]

Any skepticism we may have concerning the correctness of the district court's findings that fact issues exist concerning Shelton's conduct provides no basis for an exception to this rule. We may reverse a finding of a genuine issue of fact only "where the trial court's determination

---

[2] In *Romo*, the district court denied officer Jeff Largen's qualified-immunity summary judgment motion, holding that there were genuine issues of fact regarding whether Largen truly pulled over the same driver he saw commit a traffic violation and whether he truly felt heat radiating from the hood of the truck, allegations inconsistent with plaintiff Candido Romo's contention that he had been sleeping in his truck on a cold night when Largen approached. 723 F.3d at 673. This court declined jurisdiction: we noted that "the limitations on interlocutory appeals of qualified immunity denials [require us] to accept the district court's finding that a genuine dispute of material fact existed as to whether Largen fabricated the whole or a part of his story," and we "refuse[d] to consider Largen's factual disputations to the contrary." *Id.* at 674 (citing *Johnson*, 515 U.S. at 319–20). The *Romo* court also noted a narrow exception to *Johnson* for certain district court orders determining whether the pretrial record sets forth a genuine issue of fact for trial in the qualified-immunity summary judgment posture: a district court's determination that an issue of fact is "genuine" is reviewable only if the district court's finding is blatantly and demonstrably false, such that no reasonable jury could believe the plaintiff. *Id.* at 675 n.3 (internal citations omitted).

that a fact is subject to reasonable dispute is blatantly and demonstrably false." *Romo*, 723 F.3d at 675 n.3 (internal quotation marks omitted).

The infirmity of the district court's findings arises from two sources. First, there is a real question about whether, on this record, the jury could disbelieve Shelton's account of the events leading up to the shooting. Typically, "summary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant[']s witnesses." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed Cir. 2004). But "when challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008); *TypeRight*, 374 F.3d at 1158. Sweat offers no evidence calling into doubt the veracity of Shelton's testimony, and Shelton's deposition, read in context, is not inconsistent and does not conflict with other evidence. Sweat argues that Shelton lacks credibility because, had he truly believed his life was in danger, he would have employed lethal force when he first thought Wallace (then under the house) had a weapon. This argument may overlook the evidence that Shelton fired only after he felt a silver, hard, and square-edged object in Wallace's pocket and after observing Wallace's continued refusal to follow Shelton's demands, but that is not for this court to decide.

Second, there is a question about the weight given by the district court to expert Phillip Davidson's testimony. "Although juries are generally free to believe expert witnesses, a plaintiff cannot survive summary judgment with an expert's bare opinion on the ultimate issue." *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 363 (6th Cir. 2011) (internal citation omitted). "'[A]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'" *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (quoting *Mid-*

*State Fertilizer Co. v. Exch. Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)). In Fourth Amendment excessive force cases, once the court has drawn all reasonable inferences in favor of the nonmoving party, the determination of whether the defendant's actions were reasonable under the Fourth Amendment is a question of law. *Scott*, 550 U.S. at 381 n.8. It is unclear whether Davidson offers more than his conclusion on this question of law or whether his opinion helps the trier of fact to understand the evidence or determine a fact in issue.

The difficulties posed by the district court's determinations of the existence of genuine issues of fact do not, however, rise to the level of blatant and demonstrable falsity. *See Romo*, 723 F.3d at 675 n.3 (internal citations omitted). Thus, we may not review them in this context.

V.

*Johnson* and our court's interpretation of it require that we dismiss the appeal for lack of jurisdiction.