RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0136p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

TERESA BARRY,

> *Plaintiff-Appellee*,

*v.*

JAMES P. O'GRADY,

> *Defendant-Appellant*.

No. 17-3485

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:14-cv-02693—Edmund A. Sargus, Jr., Chief District Judge.

Argued:  November 30, 2017

Decided and Filed:  July 11, 2018

Before:  DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

---

#### COUNSEL

**ARGUED:**  Paula J. Lloyd, CITY OF COLUMBUS, Columbus, Ohio, for Appellant.  Michael Garth Moore, LAW OFFICES OF MICHAEL GARTH MOORE, Columbus, Ohio, for Appellee. **ON BRIEF:**  Paula J. Lloyd, Pamela J. Gordon, CITY OF COLUMBUS, Columbus, Ohio, for Appellant.  Michael Garth Moore, LAW OFFICES OF MICHAEL GARTH MOORE, Columbus, Ohio, for Appellee.

DAUGHTREY, J., delivered the opinion of the court in which MOORE, J., joined. SUTTON, J. (pp. 8–13), delivered a separate dissenting opinion.

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge.    Teresa Barry, a judicial administrative assistant, sued three judges and two employees of the Franklin County Municipal Court under 42 U.S.C. § 1983, claiming retaliation in violation of the Free Speech Clause of the First Amendment and gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.   The defendants moved for summary judgment, and the district court held in favor of the defendants—except on two claims against defendant Judge James O'Grady, a First Amendment retaliation claim and a Fourteenth Amendment equal-protection, gender-discrimination claim.   On those two claims, the district court rejected O'Grady's qualified-immunity argument and concluded that summary judgment was not appropriate because genuine disputes of material fact remain.

On appeal, O'Grady contends that the district court erred in denying him qualified immunity on the two remaining claims.   Because O'Grady's argument relies on disagreements with the district court's weighing of facts and factual inferences—and not questions of law—we have no jurisdiction and must dismiss the appeal.   *See Johnson v. Jones*, 515 U.S. 304, 319–20 (1995).

**BACKGROUND[1]**

Barry alleges that O'Grady created a hostile work environment rife with vulgar comments about women, either coming from O'Grady directly, encouraged by him, or tolerated by him.   Barry highlights, among other allegations, that O'Grady was involved in a conversation about a female lawyer who appeared regularly in front of the court.   O'Grady and two bailiffs explicitly discussed the lawyer's sex life, with one of the bailiffs saying that the lawyer "licked [a male lawyer] like a lap dog" and O'Grady responding that the female lawyer must be "good at

---

[1]The district court's 20-page background provides a thorough recitation of the facts that pulls from over 3,000 pages of record.   O'Grady's disagreements with the trial court's statement of the facts are central to this appeal.   For those reasons, instead of creating a new statement of the facts, we rely on the district court's opinion, available at *Barry v. O'Grady, et al.*, No. 14-cv-2693, 2017 WL 1234048, at *1–*10 (S.D. Ohio Mar. 31, 2017).

what she does." Angry at what she overheard, Barry posted about the conversation on Facebook and told the female lawyer about it.

When O'Grady learned that Barry had reported the conversation to the female lawyer, O'Grady began to retaliate. In response, Barry brought O'Grady's behavior to the attention of the court administration. She was moved out of O'Grady's chambers, and eventually accepted a transfer to a less-desirable position because she believed that was her only real option. Even after the move, her work life continued to devolve, and she suffered from mental-health issues as a result.

Barry sued under § 1983 and, after discovery, O'Grady argued that qualified immunity protected him from liability. The district court disagreed, finding disputed issues of material fact in the two claims against O'Grady and concluding that a reasonable jury could find in Barry's favor on both claims. The district court thus denied O'Grady summary judgment, and O'Grady now appeals.

## DISCUSSION

In all but a few circumstances, we have jurisdiction to hear appeals only from final decisions. *See* 28 U.S.C. § 1291. Because the denial of summary judgment is not a final decision, it ordinarily is not appealable. In the context of a denial of qualified immunity, however, a denial of summary judgment may be treated as final under § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). But "[t]he final judgment rule embodied in 28 U.S.C. § 1291 is deeply rooted in American law, and the exception carved out for orders denying qualified immunity is a narrow one." *Thompson v. City of Lebanon*, 831 F.3d 366, 373 (6th Cir. 2016) (Stanch, J., concurring in part and dissenting in part). That narrow carve-out recognizes that courts of appeals have jurisdiction to hear an appeal of a qualified-immunity denial only when the appeal presents a purely legal question. *See, e.g.*, *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). In other words, we cannot decide disputed factual issues at the summary-judgment stage, and if the appeal from a denial of qualified immunity turns on an issue of fact, we may not exercise jurisdiction. *See Johnson*, 515 U.S. at 319–20.

We have, however, recognized two narrow exceptions to the rule prohibiting fact-based interlocutory appeals.  First, "[i]n exceptional circumstances, an appellate court may overrule a district court's determination that a factual dispute exists where evidence in the record establishes that the determination is 'blatantly and demonstrably false.'" *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012) (quoting *Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011)).  And second, we may overlook a factual disagreement if the defendant, despite disputing the plaintiff's version of the story, is "willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).  Put another way, if the issues on appeal are "purely legal" and if "this court can ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue," "then there is an issue over which this court has jurisdiction." *Estate of Carter*, 408 F.3d at 310.  But to the extent that the defendant's argument "rel[ies] on [his] own disputed version of the facts," we have no jurisdiction to hear the appeal.  *McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir. 2006).

The upshot is that, in most appeals of denials of qualified immunity, we must defer to the district court's determinations of fact.  Beyond determinations of fact, "[w]e have also held that a defendant may not challenge the inferences that the district court draws from those facts, as that too is a prohibited fact-based appeal." *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015).  Indeed, "ideally we need look no further than the district court's opinion," and "we often may be able merely to adopt the district court's recitation of facts and inferences," *id.* at 611, as we have done here.

That well-settled standard is dispositive in this case.  Given that the district court's decision turned on its determination that disputed issues of material fact remain, we may exercise jurisdiction only if O'Grady can satisfy one of the two narrow exceptions to *Johnson*.  As an initial matter, O'Grady does not attempt to argue that any of the district court's factual conclusions were "blatantly and demonstrably false." *Austin*, 690 F.3d at 496 (citation and quotation marks omitted).  To be sure, O'Grady's argument on appeal is based almost exclusively on disagreements with the district court's factual determinations and inferences.  After all, his brief starts with a 24-page recitation of the facts, in which he uses facts in the

record—as well as facts not in the record—to draw inferences in his favor. But he does not explain why any of the district court's conclusions were blatantly and demonstrably false; he merely disagrees with them. That is insufficient to give us jurisdiction.

Even though this court is prohibited from resolving O'Grady's factual protests, we still would have jurisdiction over the appeal if O'Grady presented any "neat abstract issues of law," *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quotation marks and citation omitted). That is, we would have jurisdiction if O'Grady argued that he wins even when we view the facts—as we must—in a light favorable to Barry. He does not. Instead, O'Grady applies his own factual conclusions and inferences to both of Barry's surviving claims.

Throughout his argument on the First Amendment claim, O'Grady outlines the correct legal standard but then simply draws his own favorable inferences or ignores the district court's inferences in favor of Barry. For example, addressing Barry's arguably retaliatory transfer, O'Grady fails to accept Barry's claim that she felt forced to take the transfer. Instead, O'Grady continues to argue that the transfer *really* was Barry's choice, that she actually did not have to take the transfer, and that O'Grady believed that Barry wanted the transfer. These propositions, however, are not legal arguments; they are factual conclusions that are unsupported at least and directly refuted at most.

O'Grady's argument regarding Barry's gender-discrimination claim fares no better. His argument begins with the bold contention that there is "no evidence whatsoever" of O'Grady's "hostility to women in general."[2] He then argues, among other things, that Barry provided only one example of O'Grady using the term "bitch," and that Barry herself used the word on her

---

[2]It appears that O'Grady's failure to present an appealable issue of law arises, in part, from his misunderstanding of what makes a fact "material." As is long-established, "[a] 'material' fact is one 'that might affect the outcome of the suit.'" *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 485 F.3d 880, 887 (6th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). O'Grady, however, appears to argue from the understanding that "material fact" is synonymous with direct evidence. O'Grady argues that he "does not dispute Plaintiff's *material factual* allegations." Appellant's Reply Br. 2 (emphasis in original). Yet throughout his briefs O'Grady contends that there is a total lack of evidence supporting Barry's claims even when the district court concluded otherwise using inferences drawn from other record facts. For example, O'Grady cites his own deposition and the deposition of defendant Emily Shaw to show that he did not retaliate. O'Grady does not, however, address the inferences drawn in Barry's favor that led the district court to conclude that there were disputes of material fact and that a reasonable jury could conclude that O'Grady retaliated against Barry, *even though* O'Grady denied that he did.

personal Facebook page.  Addressing Barry's allegation that O'Grady said "if I wasn't married . . ." after describing a female lawyer as "hot," O'Grady contends that there is "no reasonable inference" of anti-female bias because Barry herself described someone as hot on her Facebook page.  O'Grady also addresses the conversation in which he and two bailiffs spoke explicitly about the sex lives of lawyers who appeared regularly in their court—the conversation in which the female lawyer was described by a bailiff as licking a male lawyer "like a lap dog," to which O'Grady responded that she must be "good at what she does."  Comparing that conversation to the post on Barry's Facebook page, O'Grady contends that Barry's Facebook post arguably "contains the only comment that is demeaning to the class of women in the entire evidentiary record."

Here, too, O'Grady fails to accept Barry's facts and show why, as a matter of law, she cannot prevail on her claim.  Instead, he challenges the weight, the plausibility, and the credibility of the evidence supporting Barry's gender-discrimination claim.  The closest that O'Grady comes to applying the legal standard for gender discrimination is a string cite to cases in which he argues that the "sexually offensive conduct [was] more serious or persistent" than what Barry alleges and yet we upheld summary judgments in favor of the defendants.  He does not explain, however, why those cases are similar to this case.  Nor does he apply that conclusion to the qualified-immunity analysis.  And like the rest of his briefing, in listing those cases O'Grady is not "willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Phelps*, 286 F.3d at 298 (quoting *Berryman*, 150 F.3d at 563).  Thus "we cannot entertain the defendant's arguments," whatever the merits. *Id.*[3]

---

[3]As part of her gender-discrimination claim, Barry alleged that she was constructively discharged.  On appeal O'Grady argues that there is no constructive discharge because Barry did not actually quit her job until after defendants had filed their motion for summary judgment.  He contends that "[i]t is beyond dispute the evidence she was still employed refutes any allegation Plaintiff had quit her job."  Yet again, O'Grady argues the underlying facts and fails to explain why he prevails as a matter of law when the facts are viewed in a light most favorable to Barry— indeed, he fails to cite a single case that supports his position.  In short, O'Grady's constructive-discharge argument also relies on factual disagreements with the district court and so we do not have jurisdiction to consider it. *See Johnson*, 515 U.S. at 319–20.

## CONCLUSION

We have jurisdiction to hear the appeal of a denial of qualified immunity only when "the appeal is premised not on a factual dispute, but rather on 'neat abstract issues of law.'" *Phillips*, 534 F.3d at 538 (quoting *Johnson*, 515 U.S. at 317). But here, O'Grady does not accept the facts in the light most favorable to Barry, as required by our well-settled caselaw. Instead, he "rel[ies] on [his] own disputed version of the facts," *McKenna*, 469 F.3d at 561, placing his appeal squarely into the category of cases that *Johnson* prohibits us from hearing. We thus **DISMISS** the appeal for lack of jurisdiction.

—————————

**DISSENT**

—————————

SUTTON, Circuit Judge, dissenting.  Teresa Barry has given us plenty of good reasons to deny qualified immunity to Judge James O'Grady on the ground that a material dispute of fact clouds what happened in this case and precludes summary judgment.  Rather than accept those reasons and rather than provide useful law-of-the-case precedent for the upcoming trial and any appeal from that trial, the court dismisses the appeal on the ground that we lack subject matter jurisdiction to review the fact inferences drawn by the district court under *Johnson v. Jones*, 515 U.S. 304 (1995).  This approach gives *Johnson v. Jones* a bad name, cannot be reconciled with Supreme Court precedent, and makes little sense.  If appellate courts have no jurisdiction to review the inferences drawn by a district court judge in resolving a claim of qualified immunity at summary judgment, how are they supposed to apply de novo review to the district court's decision, as Supreme Court decisions since *Johnson* do?  *See, e.g.*, *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014); *Scott v. Harris*, 550 U.S. 372 (2007).  I respectfully dissent.

In *Johnson v. Jones*, Houston Jones sued five police officers for allegedly beating him. 515 U.S. at 307.  Three officers moved for summary judgment.  When Jones presented evidence to support his account that the three officers beat him, they responded with affidavits saying only that they didn't do it.  The officers conceded that Jones would win if the jury believed his version of events.  Faced with this zero-sum, he-said/they-said standoff, the district court denied summary judgment.  *Id.* at 307–09.  The Seventh Circuit, in a two-page per curiam opinion, dismissed the appeal for lack of jurisdiction because "defendants may urge only legal issues on [interlocutory] appeals," and the *only* thing the officers did was deny the evidence-supported accusation.  *Jones v. Johnson*, 26 F.3d 727, 727 (7th Cir. 1994).  The Supreme Court affirmed, as well it should have.  It agreed that a defendant can appeal a denial of qualified immunity only "to the extent that it turns on an issue of law."  *Johnson*, 515 U.S. at 313 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).  A party seeking qualified immunity cannot appeal a summary judgment order that solely determines a question of "evidence sufficiency"—that is, a question of "which facts a party may, or may not, be able to prove at trial."  *Id.*

*Johnson* establishes an important principle—but a limited principle. An officer may not appeal the denial of a qualified immunity ruling solely on the ground that the plaintiff's record-supported facts are wrong. In the rare case in which that is all the officer does—saying in effect only that the plaintiff is lying—an appellate court should dismiss the appeal for lack of jurisdiction. Otherwise, we have jurisdiction to decide—on de novo review—whether, after reading the factual record in the light most favorable to the plaintiff, the officer should win as a matter of law on the first or second prong of qualified immunity. That's all there is to it. Each of our too-many-to-count additional glosses on *Johnson* is needlessly complicated, inconsistent with later Supreme Court cases, contradicts our duty to apply fresh review to a district court's summary judgment decision, and ultimately is hurtful to the party it is designed to help: the plaintiff.

The key gloss used today (and not for the first time) is to transform *Johnson* into a rule about what the district court did, as opposed to what the defendant officer did. No longer is the subject-matter-jurisdiction question about what *the officer does*, namely raise a legal question about whether the plaintiff's record evidence creates a material issue of fact for trial. It is a subject-matter-jurisdiction question about what the *district court did*, namely drew "inferences" that have become a forbidden source of appeal because in our circuit "that too is a prohibited fact-based appeal." *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015).

Consider the defendant official's appellate stance today to see how far we have come in transforming *Johnson*. The defendant recounts Barry's story about the raunchy November conversation. Appellant's Br. 4–6. He notes that Barry thought he grew "hostile" to her after the female attorney came to speak to him and describes the evidence to which she points to support that allegation. *Id.* at 6–8. And he recounts the harsh language and inappropriate comments that Barry alleges he made. *Id.* at 11, 24–26. I have little doubt that the defendant will challenge the veracity of those allegations at trial, as he is entitled to do. But at this stage, he has accepted the statements and done what every appellant has been allowed to do since the creation of Civil Rule 56: raise a legal challenge about whether, even accepting those facts and the inferences from those facts, he should win as a matter of law. Even on Barry's version of the facts, the defendant thinks his conduct was not severe enough to create a hostile work environment that violated her

clearly established rights. *Id*. at 44–55. That is a legal question—two legal questions really. And the defendant is permitted to take an interlocutory appeal to argue that the evidence, even when viewed in Barry's favor, could not prove that he retaliated against her in violation of her clearly established rights under the First Amendment. *Id.* at 29, 34–40. Yet the court refuses to decide whether the district court drew the proper inferences when it denied Barry qualified immunity. *Supra* at 4–7 & n.2. Instead, it dismisses the appeal for lack of jurisdiction. *Id.* at 7. It escapes me how this approach can be consistent with the responsibilities assigned to us in reviewing a summary judgment decision. Namely: Are the facts, when read in the light most favorable to the plaintiff, "sufficient as a matter of law to state a triable question under each legal element essential to liability[?]" *Walton v. Powell*, 821 F.3d 1204, 1209 (10th Cir. 2016) (Gorsuch, J.) (rejecting the broad view of *Johnson* adopted by several of our cases). Answering that law-bound question is "a core responsibility of appellate courts." *Plumhoff*, 134 S. Ct. at 2019.

In cases since *Johnson*, that's how the Supreme Court has looked at it. *Scott v. Harris* reviewed the appeal of an officer who caused a fleeing suspect to crash during a high-speed car chase. Because a camera captured the chase, there were no facts to contest, just inferences from those facts. The district court inferred from the video, when viewed in the light most favorable to the plaintiff, that a triable issue remained over whether Harris was driving safely. The Court reviewed that inference, found that the videotape evidence could not support it, and reversed. *Scott*, 550 U.S. at 374–86. That outcome and approach cannot be reconciled with this circuit's glosses on *Johnson*.

The Court did the same thing in *Plumhoff v. Rickard*. After the district court denied summary judgment because a triable issue of fact remained over whether the officers violated the Fourth Amendment, our court affirmed, but only after a many-paged attempt to figure out whether to dismiss for lack of jurisdiction. *See Estate of Allen v. City of W. Memphis*, 509 F. App'x 388, 391–93 (6th Cir. 2012). Where we saw complexity, the Supreme Court saw simplicity. It reversed. In doing so, it quickly dispensed with the jurisdictional question. The case, the Court reasoned, was "nothing like the order in *Johnson*" because it did not boil down to the he-said/they-said "claim that other officers were responsible for the shooting." *Plumhoff*,

134 S. Ct. at 2019. Rather, it "raise[d] legal issues" that were "quite different from any purely factual issues that the trial court might confront if the case were tried." *Id.* Namely, the question was whether the evidence—which included both video and witness depositions—could support the legal conclusion that the officers violated Rickard's clearly established constitutional rights. Because it could not, the Court reversed. *Id.* at 2020–24.

Instead of following the examples of *Scott* and *Plumhoff*, some panels of our court have buried the two cases in exceptions. One exception: *Johnson* does not apply to cases where all genuinely disputed facts are caught on video. *See, e.g.*, *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015). But that wasn't so in *Plumhoff*, and at any rate this innovation has no support in the Civil Rules or case law. The other exception: *Johnson* does not apply if the record evidence, whether videotaped or not, "blatantly contradict[s]" the inferences that the district court drew. *DiLuzio*, 796 F.3d at 609 (quoting *Scott*, 550 U.S. at 380). But just because the Court identified a district court's obvious error in evaluating the evidence as a *sufficient* condition for jurisdiction doesn't mean it's a *necessary* one. A rule that applies based on the medium of evidence or based on whether the district court's inferences are really wrong, not just conventionally wrong, is not a rule—and as standards go it is a terribly confusing way to decide something as essential as the subject matter jurisdiction of the court. Indeed, because this approach implicates a matter of subject matter jurisdiction, we may never look the other way. The arguments may not be forfeited or waived, requiring us to initiate this ineffable task in every summary judgment appeal involving qualified immunity—whether the lawyers press it or not.

If any doubt remains about the oddity of our approach to *Johnson*, the Supreme Court's approach to interlocutory appeals at the motion-to-dismiss stage should dispel it. At that stage, we accept the complaint's allegations as true and review whether the district court's pro-plaintiff inferences are "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is analogous to what we should do at the summary judgment stage. How strange to say that we have subject matter jurisdiction to overturn the inferences that the district court drew when reviewing one type of interlocutory appeal (motion to dismiss) but that we lack jurisdiction to overturn those same inferences when reviewing another type of interlocutory appeal (summary judgment).

We stand alone in pushing *Johnson* so aggressively.  Most circuits, true enough, have some decisions wrestling with the reach of *Johnson*.  And most of them have some opinions going both ways.  *See Romo v. Largen*, 723 F.3d 670, 686 (6th Cir. 2013) (Sutton, J., concurring in part and concurring in the judgment) (listing cases).

But none seem to invoke *Johnson* as often as we do.  A database search reveals that our published and unpublished opinions have cited *Johnson* seventy-one times since the Court decided *Plumhoff* in 2014, when one might have thought the Supreme Court rejected the full-flowering form of *Johnson*.  The Tenth Circuit comes in a distant second with twenty-nine citations.  The First, Second, Third, Fourth, Fifth, Seventh, Ninth, Eleventh, and D.C. Circuits have cited the case between zero and seventeen times.  The long and the short of it is that we are spending a lot of time doing something that no one else seems to be doing.

Making matters worse, our broad reading invites a host of inefficiencies and complications.  How exactly does an appellate court decide what the district court inferred?  Should we defer only to the inferences that the district court explicitly drew?  *See Lewis v. Tripp*, 604 F.3d 1221, 1226 (10th Cir. 2010).  I doubt it.  District courts are busy and will not parse out every inference they make in every denial of summary judgment.  Subject matter jurisdiction should not turn on whether a district court happened to say "I infer" on one day but not another.  Should we instead scrutinize the record to figure out what inferences we think the district court drew or it implied?  I doubt that as well.  It weds the already difficult task of record review with the guess work implicit in any attempt to divine what the district court was thinking when it denied summary judgment.  Keep in mind that these innovations replace something we know how to do and have been doing for years:  determine whether the defendant officer, after reading all reasonable inferences in the record in favor of the plaintiff, should win as a matter of law or whether a material triable issue of fact requires a jury trial.  I know how to do one of these tasks but have little idea how to do the other.

Oddly enough, all of this can be evaded by the clever attorney who makes sure to raise a prong-two qualified immunity argument—which to date remains a legal question subject to interlocutory review.  Then he or she can use pendent jurisdiction over the rest of the appeal, as

the two are invariably "inextricably intertwined." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51 (1995).

Last but not least, our approach to *Johnson* hurts the parties it means to help. Just ask Teresa Barry. Had we reached the merits of her claim, we might have affirmed the district court's denial of qualified immunity on the ground that a material fact dispute remained. That might have given Barry and the trial judge clear direction as to what was at stake and what law should control the jury trial at prongs one and two of the qualified immunity inquiry. And in a future appeal, the law of the case would establish the contours of what the jury could permissibly decide. Instead, Barry returns to the district court empty-handed.

In the final analysis, our gloss on *Johnson* fails to respect Supreme Court precedent, ignores the de novo standard of review applicable in reviewing summary judgment decisions, can be sidestepped at ease, and hurts the people it is designed to help. The court seeing things differently, I respectfully dissent.