RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CHARLES FITZGERALD AUSTIN,
              *Plaintiff-Appellee*,

                                                                    No. 11-2319

        *v.*


REDFORD TOWNSHIP POLICE DEPARTMENT,
                      *Defendant*,

KEVIN RILEY, TIMOTHY L. PAULL, and JOHN
M. MORGAN,

              *Defendants-Appellants*.

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:08-cv-13236—David M. Lawson, District Judge.

Decided and Filed: August 8, 2012

Before: ROGERS and STRANCH, Circuit Judges; PEARSON, District Judge.<sup>*</sup>

_____

**COUNSEL**

**ON BRIEF:** Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, P.C.,
Livonia, Michigan, for Appellants. Michelle T. Thomas, BODMAN PLC, Detroit,
Michigan, for Appellee.

_____

OPINION
_____

        JANE B. STRANCH, Circuit Judge. Charles Austin brought suit under
42 U.S.C. § 1983 against Redford Township Police Department and Officers Kevin
Riley, Timothy L. Paull, and John M. Morgan, alleging Defendants used excessive force

_____

        <sup>*</sup>The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio,
sitting by designation.

in effectuating his arrest and engaged in ethnic intimidation in violation of Michigan law. The district court granted Riley summary judgment on qualified immunity grounds with respect to his initial deployment of a Taser, but denied summary judgment on qualified immunity grounds with respect to Riley's subsequent use of the Taser, Paull's use of the police dog, and Morgan's use of the Taser. For the reasons below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.     Factual Background

In support of their Motion for Summary Judgment, Defendants have submitted videotapes[1] taken from the in-car cameras in the patrol cars of the three individual Defendants. Although we must view the facts as assumed by the district court, to the extent this version of events is "blatantly contradicted" by videotape evidence, we must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-82 (2007); *see also Coble v. City of White House, Tenn*, 634 F.3d 865, 868-69 (6th Cir. 2011) (extending the reasoning in *Scott* to videotape *or audiotape* evidence). Under this standard, the record before the district court establishes the following:

On August 5, 2005, at approximately 9:20 p.m., Redford Township Police Department Officer Kevin Riley attempted to pull over Charles Austin, an African-American male, for speeding through a construction zone. Austin fled and Riley initiated a pursuit. During the course of the chase, Austin traveled at a high rate of speed weaving through traffic, including through residential areas and construction zones, ran stop signs and red lights, and at one point traveled the wrong way on Telegraph Road. After coming to a dead end, Austin put his car in reverse and it struck Riley's vehicle. Austin then pulled into a driveway and stopped. Riley stopped directly behind Austin

---

[1]The sound in the Riley video was turned off but it shows the pursuit, the end of the pursuit, Austin's exit from his vehicle, and the initial encounter between Austin and the police officers. Once the officers pull Austin to the ground, however, the video camera's view is blocked by the rear of Austin's vehicle. The Paull and Morgan videos do not show Austin being taken into custody because their view is blocked by the police cars in front of their vehicles; however, these videos contain audio recordings of some of the relevant events and the Morgan video includes some events after Austin was taken into custody.

and several other officers arrived shortly thereafter, including Officers Paull and Morgan.

After Austin came to a stop, he threw his holstered handgun—for which he had a license—out of his car window and then exited the car. The Riley video shows the sequence of events that followed. Riley approached with his Taser drawn and pointing at Austin, and Paull, a K-9 Officer, approached with his police dog. The video shows that Austin took one small step toward Riley as he exited his vehicle, stopped, and began to raise both hands with his palms open.[2] Riley and Austin exchanged a few words, which Austin testified included instructions by Riley for Austin to stay back and return to his vehicle. As Paull's police dog, which was not leashed, approached Austin, Austin began to step backward and lower his hands. At this point, Riley fired his Taser, striking Austin in the chest. Austin fell back into his car, at which time Paull is seen pointing at Austin, instructing his dog to attack Austin. Paull removed the dog and pulled Austin out from the vehicle and onto the ground. A third officer approached and the officers worked together to restrain Austin on the ground, handcuff him, and secure the scene.

These facts are clear from the videotape; however, the parties dispute some events not depicted in the video and the inferences to be drawn from the video. Austin asserts that he complied with Riley's verbal commands and did not take any aggressive action; that some officers at the scene referred to letting the police dog get some "nigger blood"; that the police dog was deployed on him three times, including once while he was already on the ground, at which point he was bitten in the neck; and that Riley deployed the Taser on him a third time while he was pinned on the ground by another officer. Defendants, on the other hand, contend that Austin did not comply with Riley's commands to remain still and raised his hands in an aggressive manner; that the police dog was deployed only once, grabbing Austin's forearm, and was immediately called back; and that the Taser was deployed only twice by Riley, the second time when Austin attempted to get up from the ground.

---

[2]Although the district court and the parties state that Austin raised *one* open-palmed hand, the Riley videotape shows that Austin raised both hands, palms open, after he exited his vehicle. *See* Riley Video at 21:24:35–21:24:37.

In the audio recording from the Morgan video, Austin is heard complaining that his handcuffs are too tight while he is on the ground and that he is unable to breathe. One officer responded to Austin that he can breathe just fine because he is able to talk. On the Paull video, an officer is heard informing dispatch that Austin "is now secured, now secured," although two minutes later officers are heard saying "quit resisting." Austin asserts officers told him to quit resisting at a time when he was sitting handcuffed on the ground struggling to breathe as a result of the lingering effects of the Taser.

Austin is then escorted to Morgan's car in order to be transported to jail. On the way to Morgan's car, Austin can be heard complaining that his handcuffs are too tight and that he is having trouble breathing. An officer checked Austin's handcuffs and stated that he could fit one finger between Austin's wrists and the handcuffs. Austin sat on the rear seat of Morgan's car, but he refused to put his legs in the car as Morgan commanded him to do. Morgan warned Austin that he would shock him with the Taser if Austin did not put his legs into the car, and Morgan held up the Taser for Austin to see and sparked it. Austin complained that he is unable to breathe and asked that Morgan put the car window down. On the Morgan video tape, approximately thirty seconds after Morgan's initial command, Morgan can be heard administering a "drive stun" of the Taser to Austin's sternum. Morgan then administered a second drive stun, at which point Austin complied and placed his legs into the vehicle. Austin was transported to Redford Police Department, where he was charged with fleeing and eluding a police officer, operating a vehicle while intoxicated, and carrying a concealed weapon. Austin eventually pled no contest to the fleeing and eluding and driving while intoxicated charges, and was sentenced to six months' imprisonment.

## B.    Procedural History

On July 29, 2008, Austin brought a § 1983 action alleging Defendants used excessive force in effectuating his arrest and a state law claim of ethnic intimidation pursuant to Mich. Comp. Laws § 750.147b. On November 29, 2010, Defendants moved for summary judgment arguing, among other things, that the individual Defendants are entitled to qualified immunity on Austin's excessive force claim. On July 18, 2011, the

magistrate judge filed a report recommending that Defendants' motion for summary judgment be granted in part and denied in part. On Austin's excessive force claim, the magistrate judge recommended that Riley be granted summary judgment on qualified immunity grounds with respect to his initial deployment of the Taser. However, the magistrate judge recommended that the individual Defendants be denied summary judgment on qualified immunity grounds with respect to Riley's subsequent use of the Taser, Paull's use of the police dog, and Morgan's use of the Taser because a genuine dispute existed regarding whether Austin was subdued once on the ground, a situation governed by clearly established law.

On September 30, 2011, the district court entered an order adopting the magistrate judge's Report and Recommendation granting in part and denying in part Defendants' motion for summary judgment. Defendants Riley, Paull, and Morgan appeal the district court's denial of their motion for summary judgment only with respect to Austin's excessive force claim on qualified immunity grounds.[3]

## II. DISCUSSION

### A.    Jurisdiction

Under 28 U.S.C. § 1291, we have jurisdiction to hear an appeal only from a "final decision" of the district court. A district court's denial of qualified immunity is an appealable final decision pursuant to 28 U.S.C. § 1291, but only "to the extent that it turns on an issue of law." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). A defendant raising a qualified immunity defense "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995); *see also Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir.1998) ("A defendant who is denied qualified immunity may file an interlocutory appeal with this Court only if that

---

[3]The district court also denied qualified immunity on Austin's ethnic intimidation claim and Defendants do not appeal this holding.

appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law."). However, "*regardless of the district court's reasons* for denying qualified immunity, we may exercise jurisdiction over the [defendants'] appeal to the extent it raises questions of law." *Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir.1999) (en banc) (citation omitted).

In exceptional circumstances, an appellate court may overrule a district court's determination that a factual dispute exists where evidence in the record establishes that the determination is "blatantly and demonstrably false." *Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011) (quoting *Blaylock v. City of Philadelpia*, 504 F.3d 405, 414 (3d Cir. 2007)).

**B.    Qualified Immunity on Austin's Excessive Force Claims**

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts should determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]" *Id.* If the plaintiff establishes that a constitutional violation occurred, a court must next consider "whether the right was clearly established." *Id.* Courts may now address these prongs in either order; indeed one may be dispositive. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Silberstein*, 440 F.3d at 311.

The district court held that a factual dispute existed regarding whether Defendants violated Austin's constitutional rights because the evidence, viewed in the light most favorable to Austin, revealed Austin posed no significant threat to the officers once he was on the ground. Next, the district court found the law regarding the use of

force against a subdued suspect was clearly established.  Defendants do not challenge the district court's holding that the law is clear in this Circuit that the use of force, including a Taser, on a suspect who has been subdued is unreasonable and a violation of a clearly established right.  *See Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009).  Instead, the Defendants argue that the district court's conclusion—that Austin was subdued such that he was not a threat to officers at the time the disputed force was used—fits within the exceptional circumstances qualification because it is blatantly and demonstrably false.  Thus, Defendants conclude that the district court erred because no dispute of fact existed regarding whether Defendants violated Austin's constitutional rights and precedent regarding use of force on subdued subjects, though accurate in that situation, is irrelevant to this case.

### 1.     *Riley's Subsequent Use of the Taser*

Defendants argue that the videos, when considered together, show that Officer Morgan yelled "quit resisting, quit moving around" and "quit fighting with the officers" shortly after Austin was pulled out of the car and onto the ground.  Defendants take the position that the videos clearly show the officers were struggling to restrain Austin, who was still resisting, at the time Riley repeated his use of the Taser.

It is not demonstrably false from the viodeotapes that Austin was nonresistant at the time Riley deployed his Taser.  On the Paull video, an officer is heard informing dispatch that Austin "is now secured, now secured" shortly after Austin is pulled onto the ground.  Paull Video 20:51:20–20:51:22.  It is not until two minutes later that officers are heard saying "quit resisting."  Paull Video 20:53:27–20:53:33.  On this evidence, it was not blatantly and demonstrably false for the district court to conclude that a factual dispute existed regarding whether Austin was subdued at the time Riley utilized his Taser when Austin was on the ground.

Because the district court's conclusion that a disputed fact existed regarding whether Austin was subdued is not blatantly and demonstrably false, the court did not err in relying on our precedent addressing the use of force on subdued subjects.  *See Bouggess v. Mattingly*, 482 F.3d 886, 896 (6th Cir. 2007) ("When the legal question of

immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity.")

### 2.     *Paull's Use of the Police Dog*

The district court concluded that a genuine issue of material fact remained as to whether Austin was resisting or threatening the officers at the time Paull deployed his police dog. Defendants assert the district court's conclusion is blatantly and demonstrably false in light of the evidence that Austin took a step toward Riley after exiting the vehicle, that a gun was on the ground only a few feet away from Austin, and that Riley's use of the Taser was having no effect on Austin. However, as the magistrate judge points out, before Paull is seen instructing his police dog to attack Austin, the Morgan video shows Austin stopping any movement toward Riley, raising his hands with his palms open, and then falling backward into his car after Riley deploys his Taser. The district court's conclusion is not demonstrably false given this evidence.

### 3.     *Morgan's Use of the Taser*

The district court held that when Morgan used his Taser on Austin in the back seat of his police car, Austin was a "disoriented and unresisting subject." This fact is supported by the videotape, which shows Morgan leading Austin back to his patrol car without incident or resistence. The district court found that the thirty seconds between Morgan's first order to Austin to put his feet in the police car and Morgan's use of the Taser did not provide Austin with adequate time to comply with the order. Given the evidence, these facts are not blatantly and demonstrably false.

The Defendants also raise a further, purely legal, argument that this Circuit's precedent on the use of excessive force on subdued and unresisting subjects is irrelevant to situations involving noncompliance with police orders. Instead, they argue that Morgan's two discharges of his Taser in order to gain compliance with his order for Austin to put his legs in the police car did not violate any clearly established constitutional right. We review this legal argument de novo. *Bishop*, 636 F.3d at 765.

Our "prior opinions clearly establish that it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented." *Meirthew v. Amore*, 417 F. App'x 494, 499 (6th Cir. 2011). Further, "a line of Sixth Circuit cases holds that the use of non-lethal, temporarily incapacitating force on a handcuffed suspect who no longer poses a safety threat, flight risk, and/or is not resisting arrest constitutes excessive force." *Michaels v. City of Vermillion*, 539 F. Supp. 2d 975, 985-86 (N.D. Ohio 2008) (citing cases). "Absent some compelling justification—such as the potential escape of a dangerous criminal or the threat of immediate harm—the use of such a weapon on a non-resistant person is unreasonable." *Kijowski v. City of Niles*, 372 F. App'x 595, 600 (6th Cir. 2010) (discussing use of a Taser). Although Defendants cite non-binding authority from other courts for the proposition that use of a Taser to obtain compliance is objectively reasonable, each of those cases involved the potential escape of a dangerous criminal or the threat of immediate harm, neither of which is present here.

For example, in *Buckley v. Haddock*, 292 F. App'x 791 (11th Cir. 2008), the arrestee threw himself on the side of the highway as he was being led back to the officer's vehicle and refused to stand up. The officer tried numerous times to lift the man up, but was unsuccessful. The court emphasized the special circumstances present in that case: the arrestee was sitting on the side of a busy and unlit highway; the arrestee continuously stated he did not care if traffic hit him and killed him; and the officer was without backup to assist him in moving the arrestee to the safety of his patrol car. Similar facts are not present here. Austin was already sitting in the backseat of the patrol car which was safely parked at the deadend of a street with traffic blocked by other police cars. There were several other officers present. And although Austin did not immediately comply with Morgan's request to put his feet in the patrol car, Austin did not refuse; rather, he stated he was having trouble breathing and asked Morgan to roll down the car window before shutting the door. We need not decide whether we would have reached the same conclusion as the Eleventh Circuit on the officer's three uses of a Taser in *Buckley*; in any event, it is clear that the facts present here are distinguishable from those in *Buckley*.

The Defendants also cite two district court cases to support their assertion that use of a Taser to obtain compliance with an order to enter a police car is objectively reasonable.  *See Alexander v. City of Shelby Twp.*, No. 07-cv-14741, 2009 WL 3241974 (E.D. Mich. Oct. 8, 2009); *Devoe v. Rebant*, No. 05-71863, 2006 WL 334297 (E.D. Mich. Feb. 13, 2006).  We have previously distinguished *Alexander* and *Devoe* as cases involving belligerent and hostile suspects who had threatened officers either before or during the order to enter the police car.  *See Bennett v. Krakowski*, 671 F.3d 553, 562-63 (6th Cir. 2011) ("In contrast [to *Alexander*], Defendants never asserted that Plaintiff was belligerent or threatening toward them, or was actively resisting arrest in the ways the suspect was in *Alexander*.").  Thus, the cited cases are also distinguishable.

Viewing the evidence in the light most favorable to Austin, the district court found that Austin was not resisting; he was disoriented from at least two prior Taser deployments and at least one attack by a police dog; he was experiencing and complaining of shortness of breath; he was already placed in the patrol car leaving only his feet outside; and he did not have time to comply with Morgan's order before Morgan used his Taser.  There is no evidence or allegation that Austin was belligerent, threatening or assaulting officers, or attempting to escape.  As mentioned above, it is well established in this Circuit that the use of non-lethal, temporarily incapacitating force on a handcuffed suspect who no longer poses a safety threat, flight risk, and/or is not resisting arrest constitutes excessive force.  *Michaels*, 539 F. Supp. 2d at 985.  "Even without precise knowledge that the use of the [T]aser would be a violation of a constitutional right," on these facts, Morgan "should have known based on analogous cases that [his] actions were unreasonable.  *Landis v. Baker*, 297 F. App'x 453, 463 (6th Cir. 2008).  Defendants' legal argument that this Circuit's precedent on the use of excessive force on subdued and unresisting subjects is irrelevant to situations involving noncompliance with police orders fails.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of qualified immunity to Defendants.