NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0296n.06

No. 14-1974

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 23, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| AMIRA SALEM, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MILLICENT WARREN; CINDY GREENLEAF; | ) | COURT FOR THE EASTERN |
| DEAN BATKINS; SANDY SAMUELS; MARY | ) | DISTRICT OF MICHIGAN |
| RANDALL; JOANNE COLTER; MIKE | ) | |
| ANDREWS, all in their individual and official | ) | |
| capacities, | ) | |
| | ) | OPINION |
| Defendants-Appellees. | ) | |

BEFORE:   DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Amira Salem, a state prisoner, sued several prison staff, including the warden, for allegedly opening or delaying her mail in violation of Michigan Department of Corrections policy and her constitutional rights.  The district court dismissed her claims upon a motion for summary judgment.  We agree with the district court that Salem has not produced evidence supporting the individual liability of the defendants, and we therefore affirm.

**I.**

Since 2005, Salem has been serving time at the Women's Huron Valley Correctional Facility ("WHV") in Ypsilanti, Michigan.  Normally, when an inmate receives mail at WHV, the

mailroom staff feed the letter through an automatic opening machine and check the contents for contraband. The letter is then passed on to the inmate. But throughout Salem's time in WHV a Department of Corrections policy directive allowed inmates to request "special handling" of their incoming legal mail, which she did in August of 2005. The record does not make clear what "special handling" fully entailed from 2005 onwards, but both parties agree that it included an inmate's right to be present when prison staff opened legal correspondence.[1]

On May 13, 2010, Salem filed suit in federal district court under 42 U.S.C. § 1983, alleging that WHV staff violated her rights under the First and Fourteenth Amendments. In her first count, Salem claimed that prison employees improperly opened her legal mail when she was not present, despite her written request for special handling, and she recited particular incidents of opened letters dating back to 2007. In her second count, she alleged that WHV staff denied her access to court by delaying receipt of her legal mail, again citing several putative violations beginning in at least 2008. As to both counts, Salem sought injunctive, declaratory, and monetary relief against two groups of defendants in both their official and individual capacities. The first group, which we refer to as the "supervisory defendants," included the warden, Millicent Warren, a former mailroom supervisor, Cindy Greenleaf, and the then-supervisor of the mailroom, Dean Batkins. The second group, the "staff defendants," included Sandy Samuels, Mary Randall, Joanne Colter, and Mike Andrews, all of whom worked in the WHV mailroom.

---

[1] The record does not contain a copy of the policy directive as it existed from 2005 to 2009, but the record does include an updated policy directive that took effect on September 14, 2009. That version reads: "Incoming legal mail for a prisoner who has requested special handling of legal mail . . . shall be opened and inspected for . . . contraband in the prisoner's presence. The content of the mail shall not be read or skimmed." A separate section of the same version defines "legal mail" as "[o]nly mail from an attorney or law firm, a legitimate legal service organization, a non-prisoner paralegal working on behalf of an attorney, law firm, or legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, or a Friend of the Court. . . ." To receive special handling, an approved sender must be "clearly identified on the face of the envelope . . . . It is not sufficient for the envelope to be simply marked 'legal mail.'"

The defendants answered collectively, and discovery proceeded for two years under the direction of a magistrate judge, after which Salem moved for summary judgment on liability The magistrate recommended denying her motion, and the district court adopted that recommendation after Salem failed to object. The court then set a trial date of February 4, 2014. But at the end of January of that year the parties agreed to delay trial, apparently at the court's urging. Immediately thereafter the defendants moved for leave to file a motion for summary judgment, and, after Salem did not respond, the district court granted that motion. The defendants then moved for summary judgment on both the opened mail and delayed mail claims.

The district court ruled for the defendants on all issues and dismissed the case. It first disposed of all official capacity claims as barred by sovereign immunity. As to both individual capacity claims against the supervisor defendants, the district court found no evidence suggesting anything beyond vicarious liability. As to the mail-opening claim against the staff defendants, the district court found no evidence that the four employees named as defendants were in any way responsible for opening her mail. And as to the delayed-mail claim against the staff defendants, the court found nothing in the record to support Salem's claim that the delays prejudiced any litigation in which she was involved.

Salem timely appealed. Before this court, she contests only the grant of summary judgment to the defendants and only as to the claims for damages against the defendants in their individual capacities.

## II.

We review the grant of summary judgment *de novo*. *Sutherland v. DCC Litig. Facility, Inc. (In re Dow Corning Corp.)*, 778 F.3d 545, 548 (6th Cir. 2015). We will affirm only if the record shows no genuine dispute over any material fact and that the non-moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(a). We must grant Salem all favorable inferences reasonably supported by the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). But, once the defendants moved for summary judgment, it became her burden to produce evidence on each essential element of her claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 325 (1986). And she must produce enough evidence to allow a reasonable jury to find in her favor by a preponderance of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.

The Supreme Court has long blessed the practice of opening an inmate's legal mail, in her presence, so that prison officials may ensure the letter does not contain contraband. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974). But we have repeatedly required that prison officials carry out these policies in a "uniform and evenly applied"—and not "arbitrary or capricious"— manner. *Lavado v. Keohane*, 992 F.2d 601, 607, 609–10 (6th Cir. 1993). Even opening a handful of privileged letters, we have said, violates an inmate's clearly established constitutional right under the First Amendment. *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Sallier v. Brooks*, 343 F.3d 868, 879–80 (6th Cir. 2003); *Lavado*, 992 F.2d at 609). And we have also suggested that hindering the timely sending and receiving of an inmate's legal mail may also violate her right of access to courts under the Fourteenth Amendment, though we have had fewer opportunities to sketch the full contours of that right. *See Boswell v. Mayer*, 169 F.3d 384, 387–88 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

## A.

We turn first to the staff defendants. Viewing the record most favorably to Salem, there is evidence that her mail was repeatedly opened in a manner that might be deemed arbitrary or

capricious. But in this appeal Salem has preserved only her individual liability claims, and we must affirm dismissal of those claims for the staff defendants because Salem has not produced any evidence suggesting *who* should be held liable.

Though Salem extensively recounted at her deposition each piece of legal mail that she received already opened, she also repeatedly admitted that she did not—and could not—know which mailroom staff, if any, opened the letters. This is not a case where each of the defendants admits to opening a privileged letter, *see, e.g., Al-Amin v. Smith*, 511 F.3d 1317, 1320–22, 1322 n.7 (11th Cir. 2008), nor does Salem attempt to point us to any other evidence of the defendants' personal involvement. The record establishes at most that each of the staff defendants worked in the WHV mailroom. But it also establishes that the named staff defendants were not the only employees who worked there, so a reasonable jury could not conclude, by a preponderance of the evidence, that any one of these defendants violated Salem's rights. *Cf. Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (noting that a plaintiff must show "what *each* defendant did to violate the asserted right"). A mailroom employee, by virtue of her position alone, does not become the insurer of an inmate's constitutional rights. Summary judgment on her mail-opening claim was therefore proper. For the same reasons, Salem's delayed mail claim against the staff defendants also fails.

Instead of attempting to meet her burden of production, Salem claims, as she did before the district court, that the defendants bore the burden of producing evidence to show their innocence. She relies on our opinion in *Merriweather* to support this argument, but her reading of that case overlooks a crucial difference in procedural posture. It is true that in *Merriweather* we denied qualified immunity, on a similar claim, to one mailroom employee who did not produce an affidavit supporting his innocence. *See* 569 F.3d at 318–19. But that case came to us

as an interlocutory appeal after the denial of qualified immunity to those defendants. *Id.* at 312. As such, we were constrained by our jurisdictional limits not to question the district court's determination of the remaining factual disputes. *See Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 495 (6th Cir. 2012) ("A defendant raising a qualified immunity defense may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.") (internal quotation marks omitted). "In that situation, the district court's determination that the summary judgment record raises a genuine issue of fact concerning the officials' involvement is not an immediately appealable final decision and this Court lacks jurisdiction." *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011). But, in the procedural posture of Salem's appeal, "[t]he court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009).

**B.**

Next we consider Salem's claims against the supervisor defendants. Here too we affirm summary judgment. The Supreme Court has made it clear that a § 1983 plaintiff may not rely on vicarious liability to recover against a supervisor; instead, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As a result, Salem must produce some evidence that the supervisor defendants "either encouraged the specific incident[s] of misconduct or in some other way directly participated in [them]." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (internal quotation marks omitted).

Salem has not met her burden. Her brief asserts that the supervisor defendants had notice of her opened or delayed mail through an internal prison grievance process, but she does not direct our attention to parts of the record that substantiate this claim. *See Citizens Awareness Network, Inc. v. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal quotation marks omitted). And to the extent that her brief describes the actions of the supervisors, or at least the warden, those actions appear to have been meant to remedy any violations.

Salem does point to other parts of the record that she claims support the personal liability of the supervisor defendants, but these are unavailing. The first citation is to the defendants' response to a request for admission, in which they denied the statement that "legal mail requires special handling pursuant to [Department of Corrections] policy." The second citation is to the defendants' response to an interrogatory, in which they state that "[a]ll legal mail is handled in accordance with policy." There is, admittedly, some tension between these responses, and the first seems to be wrong given what we know of the special handling policy. But these responses simply do not suggest that the supervisor defendants knowingly encouraged or participated in the opening or delay of Salem's legal mail at the times alleged in the complaint. The supervisor defendants, like the staff defendants, therefore deserve summary judgment as well.

**IV.**

We affirm the judgment of the district court.