NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0095n.06

No. 23-1937

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Feb 19, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| HEATHER HULON, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF LANSING, MICHIGAN, | ) | COURT FOR THE WESTERN |
| Defendant, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| EDGAR GUERRA; TREVOR ALLMAN; | ) | OPINION |
| CHARLES WRIGHT; GARY WORDEN, | ) | |
| Defendants-Appellants. | ) | |

Before:  BATCHELDER, STRANCH, and READLER, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court in which READLER, J., concurred. READLER, J. (pp. 9–14), delivered a separate concurring opinion, in which BATCHELDER, J., concurred.  STRANCH, J. (pp. 15–20), delivered a separate dissenting opinion.

**ALICE M. BATCHELDER**, **Circuit Judge**.  In this interlocutory appeal, four police officers argue that qualified immunity shields them from suit on Plaintiff's excessive force and deliberate indifference claims.  The district court denied their motion for summary judgment after it found that genuine disputes of material fact existed as to whether the officers violated clearly established law.  The officers disagree and challenge that finding on appeal.  Because the officers could succeed on their interlocutory appeal only if we entertained their disputes of fact, we affirm.

**I.**

One afternoon in April 2020, the Lansing Police Department arrested Anthony Hulon for aggravated assault.  At the time of his arrest, Hulon appeared agitated and unable to control his

movements, but he denied being under the influence of drugs or alcohol. The officers then took Hulon to a detention center, at which point his behavior became so erratic that they placed him in an isolation cell. As the afternoon progressed, Hulon's condition only continued to deteriorate. For instance, later that evening, Hulon had placed all his clothes in the toilet and begun to yell incoherently as he banged on the cell door.

Given his behavior, the officers determined that Hulon needed medical attention and called for an ambulance. While on the way to the hospital, Hulon confessed to paramedics that he had taken what he believed at the time to be "speed"—though he now suspected that the drugs had been laced with some other harmful substance. Once at the hospital, the doctors confirmed that Hulon had consumed both methamphetamine and ecstasy.

Because no treatment for methamphetamine or ecstasy intoxication exists, the doctors administered "Ativan," a drug designed to reduce, but not prevent, Hulon's involuntary movements. The hospital then observed Hulon for several hours, after which it discharged him in "stable" condition.

Back at the detention center, Hulon's condition had not improved. He still could not control his movements, nor could he follow directions, so the officers removed his handcuffs and began to place him in a waist restraint. As they did so, however, Hulon physically resisted, and the officers eventually wrestled Hulon to the ground and pinned him on his stomach. This struggle continued for several more minutes before Hulon first complained that he could not breathe and that he was "passing out." The officers then reassured Hulon that he could in fact breathe and kept him pinned. As the struggle continued, Hulon reiterated several more times that he still could not breathe, but the officers refused to relent. Moments later, Hulon's body stopped moving, and he began to make loud noises that sounded like snoring.

Once the officers finished placing the waist restraint around Hulon's motionless body, they dragged him to the back of the cell and placed him against the wall. After they did so, the officers realized that Hulon had stopped breathing and that he no longer had a pulse. The officers then called for an emergency medical team, but the medics could not resuscitate Hulon.

Heather Hulon—the personal representative of Anthony Hulon's estate—sued the officers involved, alleging that each had violated Hulon's constitutional and statutory rights. More specifically, the complaint alleged that the officers had used excessive force in restraining Hulon, and that they were deliberately indifferent to his medical needs. The officers then invoked qualified immunity and moved for summary judgment. The district court denied their motion, however, because it found that genuine issues of material fact existed. This interlocutory appeal followed.

**II.**

Normally, this Court can hear appeals only from a district court's final decision. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013); *see also* 28 U.S.C. § 1291. An exception to this rule exists, however, and immediate appeal can be brought when a district court denies a government official qualified immunity. *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 495 (6th Cir. 2012). In these interlocutory appeals, we have jurisdiction over the "pure legal issue[s]" presented in the district court's decision. *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006). That means, in other words, that a defendant who raises a qualified immunity defense on interlocutory appeal cannot challenge a district court's determination that "the pretrial record sets forth a genuine dispute of material fact for trial." *Quigley*, 707 F.3d at 680.

**III.**

We lack jurisdiction to hear much of the officers' interlocutory appeal because it improperly challenges the district court's finding that disputes of material fact exist. The district court identified several fact disputes—such as the amount of force used and whether that amount was reasonable (among others)—and we cannot review those findings in this interlocutory appeal. *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008) ("factual dispute[s]" "fall[] outside of the narrow jurisdiction of this Court").

True, this Court can, in "exceptional circumstances," overrule a district court's determination that a fact dispute exists. *Austin*, 690 F.3d at 496. But we can take that exceptional step only if the record establishes that the district court's finding is "blatantly and demonstrably false." *Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011). And on this record, we cannot say that the district court's decision regarding the dispositive facts is obviously wrong.

That said, even when a defendant "makes impermissible arguments regarding disputes of fact," we can still consider any "purely legal issue[s]" that he properly raises. *Quigley*, 707 F.3d at 680. Here, the officers attempt to raise two legal issues. First, the officers argue that their conduct did not violate clearly established law on excessive force. While that indeed raises a legal issue, the officers' argument depends on their preferred version of the facts. In other words, to agree with the officers, we would first need to resolve in their favor several of the existing fact disputes that the district court identified. Under the version of the facts most favorable to Hulon, the officers applied substantial, bodyweight-like downward force onto the back, buttocks, and legs of her brother Anthony while they held him prone for almost five minutes, despite his repeated pleas that he could not breathe. *Hopper v. Plummer* clearly established that this use of "substantial or significant pressure that create[d] asphyxiating conditions in order to restrain a subject who

d[id] not pose a material danger to the officers or others" constituted excessive force. 887 F.3d 744, 754-55 (6th Cir. 2018). As noted, the officers vigorously contend that the facts were otherwise. And a jury may well believe them. But we cannot resolve those fact disputes on interlocutory appeal, even for qualified immunity defenses. *Cockrun v. Berrien County*, 101 F.4th 416, 422 (6th Cir. 2024) ("Our jurisdiction ends once a defendant's argument drifts from the purely legal into the factual realm and begins questioning what really happened.").

Second, the officers argue that the district court applied the incorrect legal standard to Hulon's deliberate indifference claim. They maintain that the district court should have assessed Hulon's claim under the legal standard that applied at the time of their conduct in 2020—not under the standard that applies today in 2024. And in 2020, the officers argue, this Court's deliberate indifference precedent still required a plaintiff to prove that an officer consciously disregarded a substantial risk of harm.

Before we address this issue, some context is helpful. For many years, this Court had applied a two-part test to all deliberate indifference claims; that test contained an objective and subjective component. For the objective component, the plaintiff needed to show that he had a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). And for the subjective component, the plaintiff needed to show that "an official kn[ew] of and disregard[ed] an excessive risk to . . . health or safety. *Id.* at 837. But then in 2015, the Supreme Court eliminated the subjective component from the parallel test applied to excessive force claims. *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015). When the Supreme Court did so, it did not explain whether its holding extended to other claims brought by pretrial detainees.

Eventually, this Court considered whether *Kingsley* applied to deliberate indifference claims. *See Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021). In doing so, we concluded that

*Kingsley* required us to modify—but not eliminate—the subjective prong for these claims. *Id.* at 596. That is, we decided that *Kingsley* required plaintiffs to "prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).

But with that standard's being anything but clear, our Court in *Trozzi v. Lake County* tried to clarify what *Brawner* required. 29 F.4th 745 (6th Cir. 2022). There, we determined that because *Brawner* did not eliminate the subjective inquiry—but only modified it—courts still needed "to consider the jail official's personal knowledge when applying the deliberate indifference prong." *Id.* at 754-55. *Trozzi* therefore held that a plaintiff must satisfy three elements to prevail on a deliberate indifference claim: (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer would have understood that the plaintiff's medical needs, if untreated, presented an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the plaintiff, yet he ignored that risk. *Id.* at 757-58.

One year later, however, this Court refused to follow *Trozzi*, asserting that its three-part test could not be reconciled with *Brawner*. *See Helphenstine v. Lewis County*, 60 F.4th 305, 315-16 (6th Cir. 2023). That was because, according to *Helphenstine*, *Brawner* had foreclosed any inquiry into an officer's subjective understanding. *Id.* at 316. So *Helphenstine* settled instead on a test that, at bottom, requires plaintiffs to prove that each defendant acted "recklessly in the face of an unjustifiably high risk of harm that is . . . so obvious that it should be known.'" *Id.* at 317 (quoting *Brawner*, 14 F.4th at 596).

But then, to make matters more complicated, this Court recently held that *Brawner* does not apply to actions taken before it was decided. *Lawler v. Hardeman County*, 93 F.4th 919, 927-28 (6th Cir. 2024); *see also Beck v. Hamblen County*, 969 F.3d 592, 601 (6th Cir. 2020)

(recognizing pre-*Brawner* that the circuit split on the issue could not clearly establish an objective-only inquiry for pretrial deliberate indifference claims). In reaching that conclusion, we explained that *Brawner* could not apply any earlier because its new reckless-disregard standard had not yet been "clearly established." *Lawler*, 93 F.4th at 927-28. That holding, however, appears to conflict with *Helphenstine*, which applied the new reckless disregard standard to a pre-*Brawner* deliberate indifference claim. 60 F.4th at 311-12, 326. In other words, *Helphenstine* used the new standard to deny qualified immunity after it framed the clearly established right as the "right to be free from deliberate indifference," *id.* at 326-27, while *Lawler*—much like *Trozzi* before it—used the old standard to grant qualified immunity after it focused on whether the *contours* of the right to be free from deliberate indifference had been clearly established, 93 F.4th at 927-28.

We need not reconcile these decisions in this interlocutory appeal because the practical result is the same either way: qualified immunity must be denied in this case because a genuine dispute of material fact remains. Under the version of the facts most favorable to Hulon, there was a delay of several minutes between when the officers became subjectively aware of the risk of asphyxiation and when they did anything to alleviate that risk. And even under the *Farmer* standard that *Lawler* would apply, those facts constitute deliberate indifference, as clearly established by *Hopper*, 887 F.3d at 756-57, and *Lanman v. Hinson*, 529 F.3d 673, 678, 685 (6th Cir. 2008). Or put another way, regardless of which standard applies to Hulon's claims, the outcome depends on disputed facts that must be resolved by the fact finder. For that reason, we cannot disturb the district court's denial of qualified immunity on Hulon's deliberate indifference claim, and so we decline to resolve this apparent conflict in the abstract. That said, the officers have presented an important legal issue that the district court should consider on remand.

These fact disputes identified above also prevent us from ruling for the officers in their claim that governmental immunity shields them from suit on Hulon's state-law claims. *Kindl v. City of Berkley*, 798 F.3d 391, 403 (6th Cir. 2015); *see also Shumate v. City of Adrian*, 44 F.4th 427, 451-52 (6th Cir. 2022); *Oliver v. Smith*, 810 N.W.2d 57, 61-62 (Mich. Ct. App. 2010).

## IV.

Because the officers challenge the district court's finding that a fact dispute exists, we lack jurisdiction to hear that portion of this interlocutory appeal. And because the officers cannot succeed on their assertion of qualified or governmental immunity under the version of the facts most favorable to Hulon, we **AFFIRM** the district court's denial of summary judgment.

**CHAD A. READLER, Circuit Judge, concurring.** I share the majority opinion's puzzlement over the state of our circuit's deliberate indifference law. And I join its thoughtful criticisms of the inconsistencies in that case law, which begin with the altered deliberate indifference standard announced in *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021). Maj. Op. at 5–7. *Brawner* was misguided as an original matter. 14 F.4th at 601–11 (Readler, J., concurring in part and dissenting in part). But even setting that objection aside, all should agree that the standard articulated there was "anything but clear." Maj. Op. at 6. So the ensuing decision in *Trozzi v. Lake County*, 29 F.4th 745 (6th Cir. 2022), "tried to clarify" it. Maj. Op. at 6. In the end, *Trozzi* was consistent with *Brawner*. And so it remains the law of the circuit, subsequent inconsistent panel opinions notwithstanding. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

As others have observed, *Brawner*'s wake left unanswered questions over the contours of our deliberate indifference standard for pretrial detainees. *See, e.g.*, *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) ("*Brawner* is far from clear[.]"). When that happens, future panels are left to provide answers. *Trozzi* honored that task, articulating *Brawner*'s holding in a judicially administrable three-part test. *Trozzi*, 29 F.4th at 757–58. And it did so after engaging in a detailed exploration of *Brawner*, the opinion that inspired *Brawner*, *see Kingsley v. Hendrickson*, 576 U.S. 389 (2015), our Court's subsequent precedents, and other background principles. In the end, *Trozzi*'s analysis of the issue spanned eight double-columned pages of the Federal Reporter. 29 F.4th at 751–58. There, the unanimous *Trozzi* panel faithfully advanced *Brawner*'s holding, while adhering to the understanding that a substantive due process claim cannot be grounded in a standard of culpability lower than a conscious disregard to the plaintiff's safety. *See id.* at 757–58; *see also Kingsley*, 576 U.S. at 396; *County of Sacramento v. Lewis*, 523 U.S. 833, 848–49

(1998). *Trozzi*'s "interpretation of *Brawner* was not only possible but indeed necessary." *Helphenstine v. Lewis County (Helphenstine II)*, 65 F.4th 794, 800 (Readler, J., statement respecting denial of rehearing en banc). Our en banc court, it bears noting, was content to leave *Trozzi*'s holding in place, implicitly rejecting any notion that it created an intra-circuit conflict with *Brawner*. *See Trozzi v. Lake County*, No. 21-3685, 2022 WL 2914589, at *1 (6th Cir. July 12, 2022) (order) (denying petition for rehearing en banc).

Yet a subsequent panel decision seemingly sought to achieve what the en banc court could not. Our decision in *Helphenstine v. Lewis County* purported to invalidate *Trozzi*. *See* 60 F.4th 305, 316–17 (6th Cir. 2023) ("We hold that [*Trozzi*'s] framing of the elements is irreconcilable with *Brawner*. . . . Because *Brawner* was decided before *Trozzi*, *Brawner* controls."). To *Helphenstine*'s mind, *Brawner* itself spawned no questions, but only answers.

At the outset, it bears asking how *Helphenstine* had the power to purport to nullify *Trozzi*. Traditionally, our Court applies the prior panel rule when "[b]oth rulings cannot be right," *Stewart*, 867 F.3d at 638, because the second case reaches a holding that is "[o]pposite to," "contrary to," or "in conflict with" the first, *Davenport v. MacLaren*, 975 F.3d 537, 544 (6th Cir. 2020) (Griffin, J., dissenting from denial of rehearing en banc). Most often, this occurs when two lines of precedent arise oblivious of each other and eventually butt heads. *See United States v. Abboud*, 438 F.3d 554, 567 (6th Cir. 2006); *United States v. Miller*, 161 F.3d 977, 984 (6th Cir. 1998). In such cases, the rule from the first-decided case stands. *Abboud*, 438 F.3d at 567. This command sensibly "promotes consistency and reliability" in our law, *Rutherford v. Columbia Gas*, 575 F.3d 616, 625 (6th Cir. 2009) (Clay, J., concurring in part and dissenting in part), by establishing a default rule when two lines of precedent cannot both be right—the eldest controls.

But this practice does not limit a panel's constitutional and statutory authority to interpret prior case law in deciding a future case. *Cf.* 28 U.S.C. § 46(b); *McMellon v. United States*, 387 F.3d 329, 355–56 (4th Cir. 2004) (en banc) (Niemeyer, J., concurring in part and dissenting in part). After all, we interpret our precedents in every case we decide. If a panel could invoke the prior panel rule to avoid an earlier holding any time it believed a prior decision incorrectly interpreted a prior case, nothing would remain of horizontal stare decisis. That is likely why Congress implemented a mechanism for our Court to revisit purportedly incorrect panel interpretations of precedent in the form of en banc review. 28 U.S.C. § 46(c); *see also Rutherford*, 575 F.3d at 625 ("[The] availability of [en banc] review functions as a safety valve that allows for the vindication of the interests of accuracy and justice."); *McMellon*, 387 F.3d at 356. What is more, our case law on the prior panel rule explicitly accounts for a subsequent panel's ability to interpret precedent. *See, e.g.*, *Miller*, 161 F.3d at 984 (refusing to apply the prior panel rule in part because the earlier case "has been limited by subsequent decisions"); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 476 (6th Cir. 2014) (noting that a subsequent case's "qualifi[cation]" of "overly broad language" and "clarification of the standard" from a previous case do not violate the prior panel rule). Judged by these benchmarks, *Trozzi*'s interpretation and clarification of *Brawner* presented no occasion for *Helphenstine* to deploy the prior panel rule.

But even if *Helphenstine* properly employed this practice, it is admittedly rare for a panel of our Court to purport to nullify an earlier precedent. Before taking that unusual step, one would expect the later decision to engage in a robust analysis of the earlier case. Yet *Helphenstine* at best superficially addressed whether *Trozzi* could be squared with *Brawner*. After describing *Trozzi*'s holding, *Helphenstine* dedicated just three paragraphs to reconciling the purportedly conflicting earlier decisions. 60 F.4th at 316–17. The first paragraph exclaimed "that [*Trozzi*'s] framing of

the elements is irreconcilable with *Brawner*." *Id.* at 316. Yet instead of explaining why, the opinion merely noted the varying interpretations of *Kingsley* among the different circuits—a correct observation, but one irrelevant to determining whether *Brawner* and *Trozzi* can be squared with each other. *Id.*

The second paragraph fared no better. "Whatever the merits of these approaches to *Kingsley*," *Helphenstine* announced, "we do not think that *Brawner* leaves the question open." *Id.* *Helphenstine*'s ensuing critique of *Trozzi* fell flat. True, as the opinion noted, "*Brawner* held that *Kingsley* required us to lower the subjective component from actual knowledge to recklessness." *Id.* *Trozzi* acknowledged and accounted for this "lower[ing]," however, by incorporating civil recklessness into its second element. *See* 29 F.4th at 757–58; *see also Helphenstine II*, 65 F.4th at 800. *Helphenstine* next proclaimed that "several panels of our court" have adopted *Helphenstine*'s approach. Those "several" panels were in fact just two. And neither supports *Helphenstine*. The first, in line with *Trozzi* (and over the objections of a dissenting opinion), expressly rejected a broad reading of *Brawner* that would have upended all deliberate indifference law and instead continued to focus on a defendant's subjective knowledge. *See Britt v. Hamilton County*, No. 21-3424, 2022 WL 405847, at *5–6 (6th Cir. Feb. 10, 2022). The other decision is *Greene v. Crawford County*, 22 F.4th 593 (6th Cir. 2022). *Helphenstine* found persuasive the following statement there: "A jury could find that Greene's need for immediate medical attention was 'known or so obvious that it should [have been] known . . . .'" *Greene*, 22 F.4th at 610 (alteration in original) (quoting *Brawner*, 14 F.4th at 596). But this language merely parroted the civil-recklessness language from *Brawner* that *Trozzi* incorporated into its second element. *Trozzi*, 29 F.4th at 753. And *Trozzi* explicitly accounted for *Greene*, dedicating almost two full pages of its

analysis to reflecting on the ways in which *Greene* implemented *Brawner*—and how both pointed towards *Trozzi*'s three-part test. *Id.* at 756–57.

With little more, *Helphenstine*'s concluding paragraph broadly declared that "*Brawner* controls." 60 F.4th at 317. That is an unspectacular reality, one that *Trozzi* likewise acknowledged. *See* 29 F.4th at 752 ("[W]e are bound by *Brawner*'s views . . . ."). *Helphenstine* then anointed as the controlling test for deliberate indifference to pretrial detainees a contextless quote from *Brawner*, the upshot of which instructs that an officer faces liability if he merely acts "recklessly in the face of an unjustifiably high risk of harm that is . . . so obvious that it should be known," 60 F.4th at 317 (cleaned up) (quoting *Brawner*, 14 F.4th at 596), or, as the opinion later summarized more succinctly, that "[r]eckless inaction in the face of [an] obvious need is enough to proceed to a jury under *Brawner*," *id.* at 320. By stripping *Brawner*'s language of any context— the very context *Trozzi*'s framework applied—*Helphenstine* gutted any notion of requiring "*deliberate* indifference" for these claims going forward. A recent article lauding *Helphenstine* unwittingly revealed this reality: "[*Helphenstine*'s author] made it clear he favored the 'should have known' standard, not the one requiring deliberate indifference." Ryan Kost, *After Jail Deaths and No Justice, This Kentucky Lawyer Tried to Make a Difference*, *The Marshall Project* (Dec. 4, 2024, 6:00 AM), https://perma.cc/JH9B-CDWT.

In reality, *Helphenstine*'s conclusion is the one that cannot be squared with *Brawner*, which, recall, commanded that the "action (or lack of action)" must be "intentional" and promised that "[m]ere negligence" would never suffice. *Brawner*, 14 F.4th at 585, 596; *see also Helphenstine II*, 65 F.4th at 801 ("A year and a half into the experience, *Brawner*'s promise . . . appears to be an empty one."). Nor can the ensuing cases that have blindly accepted *Helphenstine* without further analysis. *See Howell v. NaphCare, Inc.*, 67 F.4th 302, 311 n.3 (6th

Cir. 2023); *Mercer v. Athens County*, 72 F.4th 152, 161 (6th Cir. 2023); *Grote v. Kenton County*, 85 F.4th 397, 405–06 (6th Cir. 2023).

All things considered, *Helphenstine*'s inconsistencies with *Trozzi* (and, indeed, with *Brawner* itself) render it non-binding. For the author of *Trozzi,* this saga has been understandably frustrating. Future panels can take up *Helphenstine*'s attempted overruling of *Trozzi.* The district courts have already begun to do so, with foreseeable confusion. *See O'Neill v. Adams Cnty. Jail*, No. 23-CV-200, 2024 WL 3754879, at *11 (S.D. Ohio Aug. 12, 2024) ("Absent clarification, the safest course is perhaps to analyze such claims under both standards, with fingers crossed that they agree."). For today's purposes, however, this is all academic. Even under the pre-*Brawner* standard, the officers cannot prevail on their assertion of qualified immunity.

**JANE B. STRANCH, Circuit Judge, dissenting.** This is a straightforward interlocutory appeal that turns entirely on disputed facts. Our precedent provides a straightforward resolution—dismissal for lack of jurisdiction. But the majority, in a confusing deviation, resolves to hear the case while readily acknowledging that the appeal boils down to disputes of fact. Equally troubling is the majority's use of this case to cast doubt on our governing and settled caselaw by offering unwarranted commentary on an issue that neither party raised. The concurrence goes even further and explicitly seeks to relitigate that governing caselaw. I therefore respectfully dissent.

As the majority repeatedly acknowledges, the only way the defendants can succeed in obtaining qualified immunity here is if we resolve certain factual disputes in their favor. *See, e.g.*, Maj. Op. at 4 (recognizing that "the officers' argument depends on their preferred version of the facts" and "to agree with the officers, we would first need to resolve in their favor several of the existing fact disputes"); *id.* at 7 ("[Q]ualified immunity must be denied in this case because a genuine dispute of material fact remains."). Our precedent makes clear that when a defendant's "argument[s] rel[y] on disagreements with the district court's weighing of facts and factual inferences—and not questions of law—we have no jurisdiction and must dismiss the appeal." *Barry v. O'Grady*, 895 F.3d 440, 442 (6th Cir. 2018). This holds true even where the defendants make ostensibly legal arguments. As long as those legal arguments "boil[] down to disputing the facts underlying [the plaintiff's] claims," we lack jurisdiction to hear the appeal. *Cockrun v. Berrien County*, 101 F.4th 416, 421-22 (6th Cir. 2024).

That is plainly the case here. Each argument raised by the defendants turns on disputes of material fact. The majority suggests that dismissal is nonetheless improper because "the officers attempt to raise two legal issues"—namely, whether they violated clearly established law on excessive force and deliberate indifference. Maj. Op. at 4–5. It is true that we may consider

"purely legal issues" in an interlocutory appeal over the denial of qualified immunity. *Cockrun*, 101 F.4th at 419-22. But, as the majority itself recognizes, neither of these issues is "purely legal." Maj. Op at 4–5, 7. Resolution of either issue requires us to veer into the factual realm. *See id.* Our precedent is clear that, in such circumstances, dismissal for lack of jurisdiction is the proper disposition. *See Cockrun*, 101 F.4th at 422; *see also Berryman v. Rieger*, 150 F.3d 561, 564-65 (6th Cir. 1998) (holding that "our jurisdiction ends" when the "defendant's argument drifts from the purely legal into the factual realm and begins contesting what really happened"). Whether an interlocutory challenge to a qualified immunity denial turns on law or fact can sometimes be a tricky question and a close call. *See Heeter v. Bowers*, 99 F.4th 900, 909 (6th Cir. 2024). But this case is not a close call. As conceded, the "outcome depends on disputed facts that must be resolved by the fact finder." Maj. Op. at 7.

To be sure, we "may consider an interlocutory appeal of qualified immunity that contains some dispute of fact in 'two narrow circumstances.'" *Ramsey v. Rivard*, 110 F.4th 860, 866 (6th Cir. 2024) (quoting *Adams v. Blount County*, 946 F.3d 940, 948 (6th Cir. 2020)). We may overlook a factual disagreement if the defendant is "willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Id.* (quoting *Adams*, 946 F.3d at 948). In exceptional cases, we "may overrule a district court's determination that a factual dispute exists where evidence in the record establishes that the determination is 'blatantly and demonstrably false.'" *Barry*, 895 F.3d at 443 (quoting *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)). Neither circumstance is present here. The defendants repeatedly seek to resolve factual disputes in their favor. And as the majority correctly notes, on this record, we cannot say that the district court's decision regarding the dispositive facts is "blatantly and demonstrably false." *Id.* At bottom, the majority's confusing approach simply runs afoul of our circuit's precedent.

I also cannot sign on to the majority's (and concurrence's) commentary regarding our recent caselaw on deliberate indifference. *See* Maj. Op. at 5–7; *see generally* Concurring Op. Both proffer a discussion of our precedent that is, by their own admission, unnecessary to resolve this appeal. Maj. Op. at 7 (recognizing that, regardless of our post-*Brawner* decisions, "the practical result" is that "qualified immunity must be denied in this case because a genuine dispute of material fact remains"); Concurring Op. at 14 ("For today's purposes . . . this is all academic."). The graver concern, however, is that their commentary effectively invites the district court to adopt a legal test that our circuit has repeatedly rejected.

All our writings in this case agree that this appeal turns on disputes of material fact, which is all that is needed to dispose of it. But the majority and concurrence go further, using this case as an opportunity to air grievances with *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021), and *Helphenstine v. Lewis County*, 60 F.4th 305 (6th Cir. 2023). *See, e.g.*, Maj. Op. at 6 (describing *Brawner* as "anything but clear"); Concurring Op. at 9, 11–14 (deeming *Brawner* "misguided as an original matter" and criticizing *Helphenstine*). The majority suggests, and the concurrence explicitly asserts, that *Trozzi v. Lake County*, 29 F.4th 745 (6th Cir. 2022), provides the correct test for evaluating a pretrial detainee's deliberate indifference claim pursuant to *Brawner*.[1] Maj. Op. at 6–7; Concurring Op. at 9–10, 14. This commentary is unsolicited—neither party argued on appeal that *Trozzi*, and not *Helphenstine*, should apply in assessing whether the defendants were deliberately indifferent. And even if they had, that issue would have been immaterial to the resolution of this appeal.

---

[1] This threshold inquiry into whether a pretrial detainee has raised a viable deliberate indifference claim is distinct from the analysis of whether a defendant violated clearly established law for purposes of qualified immunity. When assessing the substance of a pretrial detainee's claim, we apply *Brawner* regardless of when the incident occurred. But, to resolve whether a defendant violated clearly established law, we apply the *Brawner* standard only to incidents that occurred after its issuance in 2021. *Lawler v. Hardeman County*, 93 F.4th 919, 927-28 (6th Cir. 2024).

The majority and concurrence essentially urge district courts to embrace a legal test that is not good law in this circuit. There is no dispute that, prior to *Brawner*, we required pretrial detainees to prove not only that the detainee had a sufficiently serious medical need, but also that the official subjectively "kn[ew] of and disregard[ed] an excessive risk to [the detainee's] health or safety." *Winkler v. Madison County*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In 2021, *Brawner* "modifi[ed] . . . the subjective prong of the deliberate-indifference test for pretrial detainees" from actual knowledge to "reckless disregard." *Brawner*, 14 F.4th at 596-97. One year later, despite *Brawner*'s modification of the subjective prong, the *Trozzi* panel held that courts were still required to consider "an official's actual knowledge of the relevant circumstances." *Trozzi*, 29 F.4th at 755, 757-58 (requiring the plaintiff to prove that "the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk").

*Helphenstine* subsequently rejected the deliberate indifference test articulated in *Trozzi* as "irreconcilable with *Brawner*." *Helphenstine*, 60 F.4th at 316-17. As *Helphenstine* recognized, *Trozzi*'s attempt to reimpose an actual-knowledge requirement directly contradicted *Brawner*, which had framed the subjective inquiry as follows:

> What then is required to establish deliberate indifference in [the pretrial detainee] context? Mere negligence is insufficient. A defendant must have not only acted deliberately (not accidentally), but also recklessly "in the face of an unjustifiably high risk of harm that is either known *or so obvious that it should be known*."

*Brawner*, 14 F.4th at 596 (emphasis added) (quoting *Farmer*, 511 U.S. at 836).[2] Instead of applying *Brawner*, *Trozzi* sought to substantively alter the controlling legal standard that *Brawner*

---

[2] The concurrence attempts to disregard this clearcut language by labeling it as nothing more than "a contextless quote from *Brawner*." Concurring Op. at 13. But this language was the *Brawner* court's direct answer to the pivotal question, "What . . . is required to establish deliberate indifference in [the pretrial detainee] context?" *Brawner*, 14 F.4th at 596. *Helphenstine* correctly recognized what is obvious from the case's plain language—in answering the question, *Brawner* was articulating the governing legal standard.

set forth. Faced with a clear conflict between *Brawner* and *Trozzi*, the *Helphenstine* court hewed to the well-established principle that when two cases "look in opposite directions," we must "look to the oldest decision on point." *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017). Finding the matter settled, *Helphenstine* applied *Brawner* and assessed whether the defendants acted recklessly, without requiring a showing of actual knowledge. *Helphenstine*, 60 F.4th at 316-17.

Since *Helphenstine*, our circuit's view of the matter has remained unchanged. We have repeatedly and consistently adhered to *Helphenstine*'s rejection of *Trozzi*. Most recently, in *Lawler v. Hardeman County*, we reaffirmed that *Helphenstine*—not *Trozzi*—provides the correct legal framework for analyzing a pretrial detainee's deliberate indifference claim under *Brawner*. 93 F.4th 919, 927 (6th Cir. 2024) (noting that, "[a]fter initial disagreement over what *Brawner* required, we settled on" the test articulated in *Helphenstine*, which "reduced [the] subjective element from 'actual knowledge to recklessness'" (quoting *Helphenstine*, 60 F.4th at 316)). *Lawler* adhered to an ever-growing list of published cases in which our court agreed with *Helphenstine* and expressly rejected *Trozzi*'s attempt to alter *Brawner*. *See, e.g.*, *Howell v. NaphCare, Inc.*, 67 F.4th 302, 311 n.3 (6th Cir. 2023) (agreeing with *Helphenstine* and rejecting *Trozzi* because its deliberate indifference test was "nearly identical in substance" to the pre-*Brawner* standard); *Mercer v. Athens County*, 72 F.4th 152, 161 (6th Cir. 2023) (rejecting *Trozzi* as incompatible with *Brawner*); *Grote v. Kenton County*, 85 F.4th 397, 405-06 (6th Cir. 2023) (holding that, "[c]ontrary to *Brawner*, *Trozzi*, with its focus on what an official actually knew and whether the official ignored known risks, attempted to resurrect the pre-*Brawner* . . . treatment of pretrial detainees' deliberate-indifference claims," resulting in its "rightful[] reject[ion]"). Indeed, since *Helphenstine*, every published case to address the issue has followed *Helphenstine*'s

rejection of *Trozzi*.[3]  Given this overwhelming authority, I agree with *Lawler* that our law on this matter is "settled."  93 F.4th at 927.

Because I believe the proper disposition of this appeal was dismissal for lack of jurisdiction—without relitigating our now-settled caselaw—I respectfully dissent.

---

[3] My concurring colleague dismisses this line of cases on the ground that their acceptance of *Helphenstine*'s *Brawner* test is, in his view, overly cursory.  *See* Concurring Op. at 13–14 (accusing our post-*Helphenstine* caselaw of "blindly accept[ing] *Helphenstine* without further analysis").  But the fact remains that, since *Helphenstine*, each and every one of our published cases to address this issue has agreed with *Helphenstine* and rejected *Trozzi*.